### MAINE MILE-TRACK ASS'N *v.* HAMMOND.

BILLS AND NOTES—CONSIDERATION—GAMBLING DEBT—BONA FIDE
HOLDER.

> A statute of Maine provides that all notes or bills, given for
> gambling debts are void against all except *bona fide* holders.
> Plaintiff sued as indorsee of a check given in that State in
> payment for pool tickets on horse races. *Held,* that, the tes-
> .timony on the subject justifying no other conclusion than
> that plaintiff took the check with knowledge of the consider-
> ation therefor, judgment was properly rendered for defendant.

Error to Wayne; Donovan, J. Submitted May 7, 1901.
Decided July 19, 1901.

*Assumpsit* by the Maine Mile-Track Association against
George H. Hammond, Jr., individually and as adminis-
trator, to recover the amount of a check. From a judg-
ment for defendant, plaintiff brings error. Affirmed.

*Edward W. Pendleton,* for appellant.

*Charles W. Casgrain,* for appellee.

MONTGOMERY, C. J. This is an action on a check
drawn on the Michigan Savings Bank of Detroit for the
sum of $1,123.25, payable to the order of William A.
Cloutman, signed by the defendant. The defense was that
the check was given in Maine for a gambling debt. The
statute of Maine, which was put in evidence, provides that
all notes, bills, bonds, mortgages, securities, or convey-
ances given in whole or in part for money or goods won by
gambling are utterly void against all persons except *bona
fide* purchasers of real estate and holders of negotiable
paper for a valuable consideration without notice. The
jury found for defendant, and plaintiff brings error.

The undisputed evidence shows that the plaintiff asso-
ciation owns and controls Rigby Park, at which place

races are conducted; that in the year 1897 it leased the grand-stand to Foss & Smith; that William A. Cloutman, the payee named in the check, was the cashier of Foss & Smith in their pool-selling business, and that this was known to be his business and connection with Foss & Smith by plaintiff's manager; that this check was given in payment for pool tickets, and was written in blank, and Cloutman given authority to fill it out for any balance due from defendant after the amount was ascertained at the close of the races.

Numerous assignments of error appear in the record. They all relate to the testimony bearing upon the question of notice to the plaintiff, through its manager, H. F. Farnham, of the consideration of this check, and the instructions bearing on that phase of the case. It is stated in the brief of counsel for the appellant that Farnham had no notice of what this check was given for to the payee by the maker; that there was no conversation, prior to the delivery of the check, as to its consideration; that Farnham knew nothing about the check prior to the time it was given to him by Foss & Smith. If this is a fair deduction from the testimony of plaintiff's witnesses, it may be of some importance to inquire whether error was committed in the course of the trial in the respects claimed. But a careful examination of the record satisfies us that these deductions from the testimony of plaintiff's witnesses are not warranted, and that, upon the undisputed testimony in the case, it conclusively appears that plaintiff's manager had notice of the consideration of this check. While the check bears date September 28th, it was not, in fact, received by Farnham for the plaintiff until the middle of October. On the 6th of October two telegrams were sent by Farnham to the defendant, one reading: "Your account was given me in settlement. Send check to me;" and the other reading: "Monday Quimby mailed you *tickets* and full explanation. If not satisfactory, *will copy books.*" The tickets referred to, and the only tickets which defendant had any negotiations with Foss &

Smith about, were pool tickets, representing bets on races. These telegrams show that as early as October 6th Farnham knew of this fact, and that the account related to pool tickets; further, that he had access to the books in which the account of them appeared. It is true that on direct examination Farnham testified, in answer to the question "whether or not there was any conversation, prior to the delivery of the check to you, by any one as to the consideration of this check," that there was not; and, in answer to the question "State fully anything you knew in relation to the check prior to the time it was given to you by Foss & Smith," he answered, "I knew nothing about the check. *I did of the draft.*" It also appeared by his testimony that Foss & Smith had given a draft on Hammond for some $1,400, and turned this over to himself, but that payment was stopped on this draft. This draft represented the account referred to in the telegrams above quoted. On cross-examination he testified:

"*Q.* When Foss & Smith tendered you the paper marked 'Exhibit A,' what did they say? You have stated that they said they got their matters fixed up.

"*A.* They said the matter was straightened out with Hammond. They gave me a draft first, and, before I deposited it,—I don't know whether it was the same day, or the next second day after I had it in my possession,— Hammond wired me from either Detroit or Lexington that he had stopped payment of the draft, and I took it back to them. I knew nothing about Cloutman's financial ability nor of Hammond's financial ability. Foss & Smith's name does not appear on Exhibit A.  *  *  *

"*Q.* When you heard from Foss & Smith that they had straightened their matters out with Hammond, what did you understand it referred to,—'their matters?'

"*A.* Why, the draft,—*this account.* The amount of the draft they first tendered me was, I think, a little rising $1,400.

"*Q.* What matters did you think Foss & Smith had with Hammond?

"*A.* *I didn't give it a thought at the time.* Foss & Smith, like myself, were cashing checks for horsemen all the time."

But one inference is open from this testimony,—that Farnham knew that this draft was given for the account of defendant with Foss & Smith; that he knew that this account was for pool tickets; that the account had been turned over to him; that he also knew that the check (Exhibit A) was given in lieu of the draft; that he accepted it with a full knowledge of these facts,—and it is impossible to say that he was a good-faith purchaser.

We think the correct result was reached, and the judgment will be affirmed.

The other Justices concurred.